UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ASSOCIATION OF FLIGHT ATTENDANTS—CWA, | ) ) ) |
| Plaintiff, | ) Case No. 19-cv-2867 ) |
| v. | ) Hon. Jorge L. Alonso ) |
| UNITED AIRLINES, INC., | ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

After receiving an unfavorable arbitration decision from the System Board of Adjustment, which concluded the submitted grievance was untimely, plaintiff Association of Flight Attendants—CWA ("Union") filed this suit seeking to set aside the decision under the Railway Labor Act. Plaintiff and defendant United Airlines, Inc. ("United" or "Employer") have filed cross motions for summary judgment. For the reasons set forth below, the Court grants defendant's motion for summary judgment and denies plaintiff's motion for summary judgment.

**I.  BACKGROUND**

The following facts are undisputed unless otherwise noted.[1]

---

[1] Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces Local Rule 56.1 strictly. *See McCurry v. Kenco Logistics Services, LLC*, 942 F.3d 783, 790 (7th Cir. 2019) ("We take this opportunity to reiterate that district judges may require strict compliance with local summary-judgment rules."). When one party supports a fact with admissible evidence and the other party fails to controvert the fact with admissible evidence, the Court deems the fact admitted. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015); *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004). This does not, however, absolve the party putting forth the fact of the duty to support the fact with admissible evidence. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). The Court does not consider any facts that parties fail to include in their statements of fact, because to do so would rob the other party of the opportunity to show that the fact is disputed.

Plaintiff and defendant are parties to a collective bargaining agreement (the "CBA"). Because United is a carrier covered by the Railway Labor Act, the CBA establishes a System Board of Adjustment (the "Board") to decide the parties' disputes regarding the CBA.

Section 26.C of the CBA states:

> A group of Flight Attendants or a Flight Attendant who has a grievance concerning any action of the Company which affects her/him, except as may arise out of disciplinary action, shall discuss such matter with her/his Supervisor within one hundred twenty (120) days after she/he reasonably would have knowledge of such grievance. The supervisor shall have ten (10) days in which to announce a decision.

(Award at 21). Section 26.D of the CBA states:

> The Master Executive Council President may by written request ask for a review by the Director Labor Relations—<u>Inflight</u> of any alleged misapplication or misinterpretation of this Agreement which is not at the time the subject of a grievance. The relief sought shall be limited to a change of future application or interpretation of the Agreement. The Director Labor Relations—<u>Inflight</u>/designee shall have twenty (20) days after receipt of the request for review in which to investigate and issue a decision. If the decision is not satisfactory, further appeal may be made in writing by the MEC President or the Union to the "United Air Lines Flight Attendant System Board of Adjustment" provided this is done within thirty (30) days after receipt of the decision. It shall be understood such right under the Paragraph shall not apply to hypothetical cases or situations.

(Award at 21).

On June 12, 2012, the Union's President submitted a grievance over profit-sharing payments from United. (The merits of the grievance are not relevant to this case. In a nutshell, plaintiff complained that United had included flight attendants formerly employed by Continental Airlines when it made profit-sharing payments, which meant the flight attendants who had worked for United since before the merger were paid less than if the Continental flight attendants had been excluded.) The grievance stated, among other things:

> Pursuant to Section 26.C of the 2012-16 Agreement . . . the undersigned hereby requests a review of the Company's violation of Section 5.J.2 . . . when on

2

> February 14, 2012 profit sharing payments were made to United Flight Attendants . . .
>
> In relief the Union requests . . . the Company will determine profit sharing entitlements to be paid to United Flight Attendants for 2011 and subsequent years based upon . . .
>
> Pursuant to Section 26.C. this is being filed as a System Group Grievance.
>
> Pursuant to Section 26.D. a decision is requested within twenty (20) days.

(Award at 15-16). On August 2, 2012, defendant denied the grievance, noting, among other things, that the grievance was untimely. On August 30, 2012, plaintiff submitted the grievance to the Board for arbitration.

The Board, chaired by neutral arbitrator Dana Eischen, held a five-day hearing on the grievance before accepting post-hearing briefs. On January 29, 2019, the Board issued an award in favor of United, on the grounds that the grievance was untimely. The Award states, in relevant part:

## POSITIONS OF THE PARTIES
## ARBITRABILITY

### Company

> AFA's grievance is barred by Section 26(C) of the UAL CBA, which required AFA to file its grievance within 120 days of when it 'reasonably would have knowledge' of the grievance. The evidence demonstrates beyond doubt that AFA reasonably had full knowledge well before February 14, 2012 that United was including the Continental employees in the 2011 profit share distribution scheduled for February 14, 2012.
>
> \* \* \*

### Union

> . . . Under the 1976 Settlement . . . the MEC Chair is permitted to file systemwide pay liability grievances pursuant to this paragraph, without any prior notice to the Company, and subject to a 120-day limitation on liability, so long as the grievance involves identical questions of fact and contract interpretation and is specified as a group grievance. . . . [The grievance] was specifically filed under

Section 26.D., meets all contractual requirements for such a filing, and thus constitutes a viable grievance under that provision. . . .

\* \* \*
## OPINION OF THE NEUTRAL ARBITRATOR

\* \* \*

### Course of Conduct/Custom/Practice

Absent clear and explicit contract language limiting or barring such parole evidence, proof of custom, practice and tradition, *i.e.,* 'course of conduct' is admissible and may be relied upon as an aide in determining the mutual intent of the parties under a written contract. . . .

Arbitrators and courts recognize that '[c]ourse of performance when employed to interpret a contract is an indicator of what parties intended at the time they formed their agreement. It is an expression of the parties of the meaning that they give to the terms of the contract that they made.' *See* Margaret N. Kniffen, Corbin on Contracts (5th ed. 2015) § 24.16. The Supreme Court of the United States has endorsed the admissibility and utility of such evidence for such purposes. *See* United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578-82, 80 S.Ct. 1347, 46 L.R.R.M. 2416 [(]1960)[.] . . .

\* \* \*
## ANALYSIS

### Timeliness

\* \* \*

At every step in th[e] transparent process, over a multi-month period starting in March 2011, AFA at both the International and MEC level was informed by United that the Company was going to distribute **combined** . . . profits to . . . Flight Attendants . . .

\* \* \*

In short, AFA knew or should have known on January 25, 2012, of the 'Company Action' that was described [in the grievance]. However, AFA did not file [the grievance] until June 12, 2012, which is clearly outside the 120-day mandatory grievance filing time limit of § 26.C. . . .

\* \* \*

### Section 26.D

Alternatively, according to AFA, the proven violation of CBA §26.C time limits is not jurisdictionally fatal to a decision on the merits of [the grievance] but merely bars this Board from granting 'retrospective' relief for Plan Year 2011. On that premise, AFA urges the Board to consider [the grievance] on the merits, sustain the grievance and 'prospectively correct the distribution formula for profit sharing distributions in subsequent years', *i.e.,* for Plan years 2012, 2013 and 2014.

4

> The opening and penultimate sentences of [the grievance] both plainly state that it was filed '[P]ursuant to Section 26.C as a System Group Grievance.' The only mention of §26.D in [the grievance] is a truncated last sentence request for an expedited decision: 'Pursuant to Section 26.D. a decision is requested within twenty (20) days'. According to AFA, irrespective of manifestly untimely filing under §26.C, [the grievance] is still 'separately and independently' arbitrable on its merits under [26.D] because a decision was requested within twenty (20) days 'pursuant to §26.D'.
>
> In the facts and circumstances of this particular case, AFA did not establish by persuasive evidence of record that this single oblique reference to Section 26.D time limits in the last sentence of [the grievance] 'automatically encompasses the four additional profit sharing payments the Company made according to the flawed formula despite AFA's pending grievance, namely: the 2013 distribution of 2012 profits; the 2014 distribution of 2013 profits and the 2015 distribution of 2014 profits'. The record shows a pattern of AFA citing both Sections 26.C and 26.D in grievances for many years 'to protect the damages'. But the record before this Board is far from clear concerning the mutually intended consequences in this particular case. The only thing that is clear is these Parties have long held sharply differing positions on that point.
>
> * * *
>
> In the unique facts and circumstances of this case record, the Board is unable to make an informed determination that mere citation of 26.D time limits is mutually intended to revitalize an untimely filed nonarbitrable claim of contract violation to which the Continuing Violation Doctrine is inapplicable.

(Award at 25-26, 29, 35-37, 39, 42, 44, 47-48).

## II. STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). When considering a motion for summary judgment, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021 (7th Cir. 2018). Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A genuine issue

5

of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). "As the 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017).

### III. DISCUSSION

Pursuant to the Railway Labor Act, a district court has jurisdiction to set aside an order of a Board. 45 U.S.C. § 153 First (q). That section, though, limits a court's power to set aside a Board's order to the following reasons:

> for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order.

45 U.S.C. § 153 First (q). In this case, the Union argues the Board exceeded its jurisdiction.

"Arbitrators exceed their jurisdiction if they fail to interpret the collective bargaining agreements between the parties" but not if they merely "make a mistake in interpreting a collective bargaining agreement." *Brotherhood of Locomotive Engineers and Trainmen, Gen'l Comm. of Adjustment v. Union Pacific RR Co.*, 719 F.3d 801, 803 (7th Cir. 2013). There, the Seventh Circuit explained:

> Lawyers and judges who believe they see an error of reasoning or interpretation by an arbitrator are often tempted to try to correct such errors. Such error correction is not the function of judicial review of arbitration awards under the Railway Labor Act. That is why we have said many times that the question 'is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract.'

6

*Brotherhood of Locomotive Engineers*, 719 F.3d at 803 (*quoting Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1195 (7th Cir. 1987)). The Supreme Court has said:

> The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of awards. . . .
>
> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. . . .
>
> A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award. Arbitrators have no obligation to the court to give their reasons for an award. To require opinions free of ambiguity may lead arbitrators to play it safe by writing no supporting opinions. This would be undesirable for a well-reasoned opinion tends to engender confidence in the integrity of the process and aids in clarifying the underlying agreement.

*United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596-98 (1960). Still, if an arbitrator issues an award contrary to an express term of the CBA such that "[t]here is no basis for any other interpretation and thus 'no possible interpretive route to the award,'" then an arbitrator has exceeded his authority. *United States Soccer Federation, Inc. v. United States Nat'l Soccer Team Players Assoc.*, 838 F.3d 826, 833 (7th Cir. 2016); *see also Wilson v. Chicago and North Western Transp. Co.*, 728 F.2d 963, 967 (7th Cir. 1984) ("The agreement between [the parties] requires the dismissal of disciplinary charges if the railroad fails to hold required investigative hearings within the specified time limits; under the Act this provision can only be

altered through the collective bargaining process. We hold that [the Board] exceeded its authority in attempting to alter this provision and fashion their own remedy.").

Here, plaintiff does not challenge the Board's conclusion that the grievance was time-barred as to the year 2011. (Award at 44) ("AFA knew or should have known on January 25, 2012 of the 'Company Action' that was described as the alleged CBA violation in [the grievance.] . . . However, AFA did not file [the grievance] until June 12, 2012, which is clearly outside the 120-day mandatory grievance filing time limit of §26.C.").

Instead, plaintiff takes issue with the Board's refusal to consider the grievance as to subsequent years. Plaintiff's theory seems to be that, by mentioning § 26.D in the grievance, the Union was expanding the grievance to years beyond 2011. The Board rejected the theory. Plaintiff argues that the Board exceeded its authority by writing in a requirement that the parties must have "'mutually intended' the availability of prospective relief" and by applying a 120-day limitations period to Section 26.D. The Court disagrees and concludes that the Board interpreted the CBA. The Court sees an interpretive route to the Board's conclusion.

First, the Board appears to have been unconvinced by plaintiff's attempt to add subsequent years to the grievance, because plaintiff did not clearly indicate in the grievance that it was intended to cover subsequent years. The Board noted: (1) that the grievance seemed to be, by its terms, merely a § 26.C grievance; and (2) that the only reference to 26.D was an attempt to obtain an *expedited* decision (as opposed to a decision about subsequent years). (Award at 47) ("The opening and penultimate sentences of [the grievance] both plainly state that it was filed '[P]ursuant to Section 26.C as a System Group Grievance.' The only mention of §26.D in [the grievance] is a truncated last sentence request for an expedited decision: 'Pursuant to Section 26.D. a decision is requested within twenty (20) days'.").

8

Second, the Board appears to have considered the language of § 26.D, which, by its terms, seems to allow requests for review only in the *absence* of a grievance on the same issue. Specifically, § 26.D allows the President to "ask for a review . . . of any alleged misapplication or misinterpretation of this Agreement *which is not at the time the subject of a grievance.*" (Award at 21) (emphasis added). That language would seem to suggest that plaintiff could not merely tack a § 26.D request for review onto a § 26.C grievance. The Board mentioned the problem of an already-pending grievance. (Award at 48) ("AFA did not establish by persuasive evidence of record that this single oblique reference to Section 26.D time limits in the last sentence of [the grievance] 'automatically encompasses the four additional profit sharing payments the Company made according to the flawed formula *despite AFA's pending grievance*") (emphasis added).

Although the terms of 26.D did not appear to allow a request for review on the same subject as a pending grievance, the Board still went on to consider whether, under the parties' usual custom or practice, mere mention of 26.D could expand a grievance into a request for review as to future years. There is nothing inherently wrong with considering custom or practice when interpreting a contract. *See Transportation-Communication Employees Union v. Union Pacific RR Co.*, 385 U.S. 157, 160-61 (1966) ("A collective bargaining agreement is not an ordinary contract. . . . [I]t is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate. . . . *In order to interpret such an agreement* it is necessary to consider . . . the practice, usage and custom pertaining to . . . such agreements.") (emphasis added); *Dennison v. MONY Life Retirement Income Security Plan for Employees*, 710 F.3d 741, 745 (7th Cir. 2013) ("When the consistent performance of parties to a contract accords with one of two alternative interpretations of the contract, that's strong evidence for that interpretation. This is a

9

general principle of contract interpretation[.]"); *Restatement (Second) of Contracts,* § 202, comment (g) (1981) ("The parties to an agreement know best what they meant, and their action under it is often the strongest evidence of their meaning."). The Board explicitly stated it could consider evidence of custom or practice in interpreting the CBA. (Award at 36) ("proof of custom, practice and tradition, *i.e.,* 'course of conduct' is admissible and may be relied upon as an aide in determining the mutual intent of the parties under a written contract.").

When the Board considered custom and practice, it found insufficient evidence of past practice to support plaintiff's proposed interpretation (that mere mention of 26.D expanded the grievance to a request for review of future years). Specifically, the Board said:

> AFA did not establish by persuasive evidence of record that this single oblique reference to Section 26.D time limits in the last sentence of [the grievance] 'automatically encompasses the four additional profit sharing payments the Company made according to the flawed formula despite AFA's pending grievance[.] . . . The record shows a pattern of AFA citing both Sections 26.C and 26.D in grievances for many years 'to protect the damages'. But the record before this Board is far from clear concerning the mutually intended consequences in this particular case. The only thing that is clear is these Parties have long held sharply differing positions on that point.
> \* \* \*
> [T]he Board is unable to make an informed determination that mere citation of 26.D time limits is mutually intended to revitalize an untimely filed nonarbitrable claim of contract violation to which the Continuing Violation Doctrine is inapplicable.

(Award at 47-48). In other words, nothing in the parties' practice suggested to the Board that plaintiff's interpretation of the CBA was correct.

Thus, it appears to this Court that the Board considered the language of the CBA and, in absence of CBA language supporting plaintiff's argument, considered past practice. It found a lack of evidence of past practice to support plaintiff's argument. The Court does not read the Board's decision as adding a requirement of mutual intent before the Board can consider a grievance but rather as looking toward the CBA's language and past practice to determine

10

whether plaintiff's proposed interpretation (that mere mention of 26.D adds a request for review to a grievance) of the CBA was correct. Nor does it appear to this Court that the Board applied the 26.C limitations period to a 26.D request for review. Rather, the Board seems to be saying that the grievance did not, on its face, include a request for review, which makes sense given the CBA's language limiting requests for review to issues on which no grievance is pending. It appears the Board was saying the grievance was a time-barred 26.C grievance and that the mere mention of 26.D did not convert the grievance to a 26.D request for review. In so concluding, the Board looked at the CBA's language and past practice and concluded that mere mention of 26.D did not expand the 26.C grievance in a way that got around the limitations period applicable to a 26.C grievance.

In short, the Board interpreted the CBA, which is enough for this Court. *See Union Pacific*, 719 F.3d at 807 ("The only question for this Court is whether the arbitrator interpreted the [CBA]. Our task is limited to determining whether the arbitrator's award could possibly have been based on the contract."); *Tice v. American Airlines, Inc.*, 373 F.3d 851, 854 (7th Cir. 2004) ("The plaintiffs challenge the correctness of the ruling, but we have no power to review an arbitral ruling for error. As long as what the arbitrators did can fairly be described as interpretation, our hands are tied."); *Lyons v. Norfolk & Western Ry. Co.*, 163 F.3d 466, 470 (7th Cir. 1999) ("It is not for us to decide if this conclusion was correct; it is sufficient for us to say that in arriving at this conclusion, the [Board] was interpreting the contractual term . . . Because we find that the [Board] interpreted the contract, its interpretation is conclusive."). That plaintiff disagrees with the Board's interpretation of the CBA does not mean the Board exceeded its authority.

11

Plaintiff has not presented this Court with grounds on which to set aside the Board's decision. Accordingly, defendant is entitled to judgment as a matter of law. The Court grants defendant summary judgment as to Count I.

### IV. CONCLUSION

For all of these reasons, defendant's motion [21] for summary judgment is granted, and plaintiff's motion [27] for summary judgment is denied. Civil case terminated.

SO ORDERED.  ENTERED: April 30, 2020

_____

HON. JORGE ALONSO
United States District Judge